GEORGE E. WOODS, as Supervisor, etc., Appellant, *v.* THE BOARD OF SUPERVISORS OF MADISON COUNTY, Respondent.

The power given to boards of supervisors to audit, settle, pay or compromise claims against their counties implies power to waive by proper agreement the defense of the Statute of Limitations, as to claims not already barred, and where it has thus been waived by a board its action binds a succeeding board.

When some office or function can, by fair construction, be assigned to both of two statutes, and they confer different powers, to be exercised for different purposes, although both are designed to operate upon the same general subject, the former statute will not be deemed to have been repealed by the later, but both will stand.

The provision of the act of 1874 (Chap. 296, Laws of 1874) repealing the provision of the act of 1866 (§ 16, chap. 398, Laws of 1866), in reference to the construction of the N. Y. & O. M. R. R., which exempts for a period specified that road from taxation, appropriating the moneys collected "for county taxes" to the towns or municipalities which have issued bonds in aid of the construction of said road, and directing such moneys to be paid over to the commissioners of such towns or municipalities, did not operate to repeal or prevent the application as to them of the provision of the General Railroad Act (Chap. 140, Laws of 1850, as amended by chap. 907, Laws of 1869, and chap. 283, Laws of 1871), which provides that all taxes, except school and road taxes, collected upon the property of a railroad in any town, city or village which has

issued bonds in aid of the construction of said road shall be invested by the county treasurer and held as a sinking fund to pay the bonds so issued. The effect of the said act of 1874 was to subject said road to taxation, and to make the said provisions of the general law in reference thereto applicable, modified, however, so as to require that the county taxes. instead of being invested, all be paid over to the railroad commissioners, to be used to pay the current interest on the bonds; leaving the general law to have full operation upon the taxes collected for state purposes.

(Argued December 5, 1892; decided January 17, 1893.)

APPEAL from judgment of the General Term of the Supreme. Court in the fourth judicial department, entered upon an order made September 8, 1891, which directed a judgment in favor of defendant on submission under the Code of Civil Procedure (§ 1279) of a controversy without action.

The facts agreed upon, so far as material, are stated in the opinion.

*Henry B. Coman* for appellant. The plaintiff is entitled to recover the amount of state taxes collected from the railroad company during the years 1884 to 1889, inclusive, the six years next preceding the date of the submission. (Laws of 1869, chap. 907 ; Laws of 1871, chap. 283 ; 2 R. S. [8th ed.] 948 ;. *Clark* v. *Sheldon*, 106 N. Y. 104 ; *Strough* v. *Suprs.*, 119 id.. 212 ; *Crowinshield* v. *Suprs.*, 124 id. 583 ; *Kilbourne* v. *Suprs.*, 62 Hun, 210.) Chapter 293 of the Laws of 1874 did not, by implication, repeal chapter 907 of the Laws 1869, as to the towns bonded in aid of the construction of the Midland railroad. (§ 4, Laws of 1869, chap. 907 ; Laws of 1871, chap. 283 ; Laws of 1874, chap. 293 ; *People* v. *Palmer*, 52 N. Y. 83 ; *In re Evergreens*, 47 id. 216 ; *Mongeon* v. *People*, 55 id.. 613 ; *Hankins* v. *Mayor*, 64 id. 18 ; *Mark* v. *State*, 97 id. 572 ; *Wood* v. *U. S.*, 16 Pet. 362 ; *Davies* v. *Fairbairn*, 3 How.. [U. S.] 636 ; *Goldson* v. *Buck*, 15 East. 371 ; *Bowen* v. *Lease*, 5 Hill, 221 ; *Hayner* v. *Jones*, 17 N. Y. 316, 323 ; *Behan* v. *People*, Id. 1516–520 ; *Leavitt* v. *Blatchford*, Id. 521–558 ; *Barton* v. *Himrod*, 4 id. 483.) The plaintiff is

also entitled to recover from the defendant the amount of state and county taxes collected from the railroad company for the years 1882 and 1883. (Code Civ. Pro. § 395; *Anderson* v. *Sibley*, 28 Hun, 16; *Shapley* v. *Abbott*, 42 N. Y. 443; *Mosher* v. *Hubbard*, 13 Johns. 510; Dillon on Mun. Corp. [4th ed.] § 89; *Brady* v. *Mayor, etc.*, 1 Barb. 584; *Hall* v. *Baker*, 74 Wis. 118; *Buffalo* v. *Beltinger*, 76 N. Y. 393; *Shanklin* v. *Madison County*, 21 Ohio St. 575; *In re Girard*, How. [U. S.] 127; *Parker* v. *Bd. Suprs.*, 106 N. Y. 392.

*John E. Smith* and *Charles A. Hitchcock* for respondent. The General Term did not err in holding that the plaintiff is not entitled to recover the items $112.52, $152.40, $124.13, $147.37, $164.29, $149.20, $150.67 and $201.07, assessed and collected for, and by the county treasurer paid for state taxes. (Laws of 1866, § 16, chap. 398; *Smith* v. *People*, 47 N. Y. 330; *Mongeon* v. *People*, 55 id. 613; *Bowen* v. *Leese*, 5 Hill, 221; *Spratt* v. *Huntington*, 2 Hun, 341; *McCarty* v. *O. A. Society*, 9 Cow. 437; *In re D. & H. C. Co.*, 69 N. Y. 209, 212; *In re R. W. Co.*, 66 id. 413; *Erkenbrach* v. *Erkenbrach*, 96 id. 466; *Strough* v. *Bd. Suprs.*, 119 N. Y. 218; *Liddy* v. *L. I. City*, 104 id. 218.) The items of $112.52 and $127.72 with interest thereon from the 1st day of June, 1883; and the items of $152.40 and $140.19 with interest thereon from the 1st day of June, 1884, are barred by the Statute of Limitations. (*Roberts* v. *Ely*, 113 N. Y. 128; *Butler* v. *Johnson*, 111 id. 204; *In re Nelley*, 95 id. 386; *Strough* v. *Board Suprs.*, 119 id. 212, 220; *Wood* v. *Suprs.*, 50 Hun, 1; *People* v. *Lawrence*, 6 Hill, 244; *Gere* v. *Bd. Suprs.*, 7 How. Pr. 225; 12 id. 50; Cooley's Const. Lim. [5th ed.] 295; *Denton* v. *Jackson*, 2 Johns. Ch. 320; *Todd* v. *Birdsall*, 1 Cow. 260; Dillon on Mun. Corp. 33; *Lee* v. *Monroe*, 7 Cranch, 366; *Bd. Suprs.* v. *Ellis*, 59 N. Y. 624; *Newman* v. *Bd. Suprs.*, 45 id. 676; *Rochester* v. *Collins*, 12 Barb. 659; *Dunham* v. *Rochester*, 5 Cow. 462; *Jefferies* v. *Lawrence*, 42 Iowa, 498; *McPherson* v. *Foster*, 43 id. 48; *Milhan* v. *Sharp*, 17 Barb. 435; 27 N. Y. 611;

*Spring* v. *Wait*, 22 Hun, 441; *People* v. *Gallopp*, 30 Hun, 501; 96 N. Y. 628; *People ex rel.* v. *Suprs.*, 38 Hun, 374; 105 N. Y. 180; *Parker* v. *Suprs.*, 106 id. 392; *People ex rel.* v. *Suprs.*, 121 id. 346, 351; *Gould* v. *Sterling*, 25 id. 256; *Clark* v. *Des Moines*, 19 Iowa, 199; *Veeder* v. *Lima*, 19 Wis. 280; *Thomas* v. *Richmond*, 12 Wall. 349; *East Oakland* v. *Skinner*, 94 U. S. 255; *People ex rel* v. *Gallopp*, 96 N. Y. 628.) The defendants are not estopped from pleading the Statute of Limitations. (*Crawford* v. *Lockwood*, 9 How. Pr. 547; *Shapley* v. *Abbott*, 42 N. Y. 443; *Suprs.* v. *Ellis*, 59 id. 620, 625.)

O'BRIEN J. The facts in this case were agreed upon and submitted to the General Term under the provisions of § 1279, of the Code.

The town of Stockbridge in the county of Madison, through the plaintiff, its supervisor, sought to recover from the county certain taxes levied and collected in the town from the New York and Oswego Midland Railroad Company, for the benefit of which corporation the town had issued its bonds under the provisions of chapter 398, of the Laws of 1866. The taxes so levied and collected, the plaintiff claims, have been diverted, by the action of the board of supervisors and the treasurer of the county, from the use of the town to general county purposes, contrary to the provisions of Ch. 907, of the Laws of 1869, as amended by Ch. 283, of the Laws of 1871.

The General Term held that the plaintiff was entitled to the relief demanded only with respect to the county taxes collected and diverted within six years prior to the commencement of the action. The principle upon which the decision rests seems to be that the state taxes collected from the railroad within the town are not within the statute and the county could lawfully apply them to general purposes, and that as to all taxes collected in the years 1882 and 1883 the plaintiff's claim was barred by the Statute of Limitations.

The right of towns that have issued bonds in aid of rail-

roads and which are still outstanding to reclaim taxes collected from the railroad within the town, but diverted to general purposes, is well settled. (*Clark* v. *Sheldon*, 106 N. Y. 104; *Strough* v. *Supervisors*, 119 N. Y. 212; *Crowninshield* v. *Supervisors*, 124 N. Y. 583; *Kilbourne* v. *Supervisors*, 62 Hun, 210.)

In this case, however, it becomes necessary to determine the effect of certain special statutes, applicable to the railroad in question and the towns issuing bonds in its aid, upon the general law.

By § 16 of Ch. 398, Laws of 1866, the statute under which the bonds of this town were issued, the property of the railroad was exempted from all taxation for state, county, town or municipal purposes, until a single track was completed and in operation, but the exemption was not in any event to extend beyond the period of ten years. The next statute that must be considered is the general law, Ch. 907, Laws of 1869, as amended in 1871, already referred to, the fourth section of which enacts as follows :

"All taxes, except school and road taxes, collected for the next thirty years or so much thereof as may be necessary, in any town, village or city, on the assessed valuation of any railroad in said town, village or city, for which said town, village or city has issued or shall issue bonds to aid in the construction of said railroad   *   *   *   shall be invested by said treasurer and by him held as a sinking fund for the redemption of the bonds so issued."

This provision became at once applicable to every municipality that had issued bonds which were outstanding under any law in aid of the construction of any railroad within its borders : but as the railroad, in aid of which the town in question had issued its bonds, was then by law exempt from taxation it could not apply until the exemption was removed by lapse of time or otherwise. This event happened upon the passage of Ch. 296 of the Laws of 1874, the first section of which expressly repeals the exemption and provides that thereafter all the property of the corporation shall be subject to taxation

for all purposes. The provisions of the act of 1869 above quoted immediately took effect and became applicable to this town and to the taxes collected from the railroad within its limits. But the act of 1874 contained another provision from which the principal argument in support of the judgment under review is deduced. It was provided that the collector of taxes in each town that had issued bonds in aid of the railroad should pay over to the commissioner of the town, within five days after collection, all moneys collected by him for *county taxes* which had been assessed upon the property of the railroad within the town to be expended and applied by the commissioner in payment of the interest on the bonds, or the principal. It is urged by the learned counsel for the defendant that as the act of 1874 first removed the exemption from all taxation from the railroad property, and at the same time provided for the disposition of the county taxes, collected on the property within the town, it must be deemed to contain the whole law on the subject applicable to the towns that had issued their obligations in aid of this particular railroad, or that the two enactments are so repugnant to and inconsistent with each other that the act of 1869 must be deemed to be repealed as to the towns embraced within the purview of the act of 1874, as both provisions cannot operate at the same time. This position, we think, is untenable. The act of 1869 required the treasurer to invest the moneys collected from railroads within the bonded towns, and thus to form a sinking fund for the redemption of the bonds. All taxes collected from railroad property within such towns were thus tied up for future use, and current expenses, including the current interest on the bonds as the same fell due, had to be provided for by taxation on other property. When the act of 1874 was passed the railroad was evidently in the hands of a receiver, and the obligations which the towns and municipalities had assumed began to press upon them in a manner perhaps not yet fully realized. Hence the legislature was induced not only to repeal the exemption but to modify the act of 1869, as to these towns, by providing that the county taxes collected from the railroad

within the towns, instead of being invested should be used to pay the current interest on the bonds, as it became due, leaving the general law to have full operation upon the taxes collected for state purposes. The case does not come within the rule that a former statute is to be deemed repealed by implication when a subsequent one, though not purporting to amend or repeal the former, is so repugnant to the first act that both cannot operate together, or when the later statute was evidently intended to furnish the whole law on the particular subject. (*Lyddy* v. *Long Island City*, 104 N. Y. 218.) When some office or function can by fair construction be assigned to both acts, and they confer different powers to be exercised for different purposes, both must stand, though they were designed to operate upon the same general subject. (*People, etc.*, v. *N. Y. C. P.*, 101 N. Y. 195.) The repeal of a statute by implication is not favored, and courts will not declare such a result except in a case reasonably clear, and where all the conditions necessary to such a conclusion are present. In this case it is quite clear that the general law of 1869 can have full operation upon the state taxes and the investment of the same for one purpose, and the act of 1874 operates upon the county taxes and their application for another purpose, and thus they are reconciled and effect given to both. An action for this purpose must be brought within six years from the time when the taxes were diverted or misappropriated, as the cause of action accrues by that act, and is then complete (*Strough* v. *Supervisors, supra*); and as to the taxes for the years 1882 and 1883, in respect to which the plaintiff was defeated, that period had elapsed, and the claim was *prima facie* barred. But on the 18th day of November, 1887, and again on the 23d of November, 1888, the board of supervisors of the county, as organized at these dates, passed resolutions, the first referring to the tax of 1882, and the second to the tax of 1883, in which they expressly stipulated and agreed not to interpose the defense of the Statute of Limitations to any sum found due the town on account of the taxes in question, and the remaining question is as to the legal effect of such action. The learned counsel

for the defendant contends that the board was without power to bind their successors by such action, or to waive the defense. The resolutions were passed before the bar of the statute had run against the claim for the years mentioned, and they are identical in language, except with respect to the year for which the claim was made. They recited in substance that the bonded towns claimed to be entitled to the taxes collected upon the railroad property within their respective limits for these years, and that the county was indebted to them therefor, and that the towns had made demand upon the board for the restoration of the same, the service of which upon the board was admitted. Then follows the stipulation and agreement above mentioned, which is expressed to have been made for value received. It is not suggested that there is any defect in this instrument, either in form or substance, that would render it insufficient for the purpose intended, if the board had the power to enter into it. The same resolutions were passed with reference to the taxes of 1884 and 1885, but the statute had not run against the claim for these years when this action was commenced. It is stated as a fact in the case agreed upon that the plaintiff, relying upon the validity of such resolutions, refrained from bringing an action in time for the recovery of the taxes for these years, which, but for such stipulations, he would have done. If the county, through its board of supervisors, can waive the statute like an individual, this would seem to be a writing signed by the party to be charged, and containing a sufficient acknowledgment of the debt and a promise to pay the same within the meaning of the Code. (Code, § 395; *Chemung Canal Bank* v. *Supervisors*, 5 Den. 517; *Shapley* v. *Abbott*, 42 N. Y. 443; *Anderson* v. *Sibley*, 28 Hun, 16; *Mosher* v. *Hubbard*, 13 Johns. 510.)

Boards of supervisors represent the county in its corporate capacity and have power to bind it to the extent conferred by statute and when any act of such board is challenged as beyond its power, or not binding upon the county, resort must be had to the specific powers enumerated in the statute which such board may exercise. But in such cases the body is not con-

fined to the exercise of the precise act contained in the grant
of power but, from the nature of the case as well as upon set-
tled principles, it possesses and may exercise such incidental
powers, not expressly enumerated or mentioned in the statute,
but which are fairly and reasonably necessary and proper in
order to give effect to or carry out the powers expressly con-
ferred. (Dillon on Mun. Corp. § 89; *Brady* v. *Mayor, etc.,*
1 Barb. 584; *Supervisors* v. *Bowen,* 4 Lans. 24.)   Boards of
supervisors are expressly empowered by statute " to examine,
settle and allow all accounts chargeable against the county,
and to direct the raising of such sums as may be necessary to
defray the same."   It cannot be doubted that the board had
power to settle and allow the plaintiff's claim and to restore
the money which had been appropriated to the benefit of the
county at large, instead of investing or using it for the benefit
of the town as required by the statute.  Nor can it be doubted
that in this suit the defendant could have most effectually
waived the defense of the Statute of Limitations by honestly,
and without collusion, refusing to plead it.  Having the power
to audit and settle the claim and to bind the county in that
respect, it is difficult to discover any sound reason in law or in
morals for the contention that the stipulation in question is
not also within the scope of their necessary incidental powers.
The board may have been in doubt as to their powers or
duty to pay or audit and by the stipulation it pro-
cured time and induced the plaintiff to delay legal pro-
ceedings.    Under    such    circumstances    justice    requires
that   the   defendant   be   held   bound   by   the   stipulation
in   the   same   way   as   if   made   between   individuals   for
a like purpose.  It was said by Church, Ch. J., in *Buffalo*
v. *Bettinger* (76 N. Y. 393), that " a municipal corporation has
public and private attributes, and its rights and duties are
regulated accordingly.   In protecting its property, in collect-
ing its debts, and in general in transacting business of a
private character, when not otherwise provided by statute, it
may avail itself of the rights and remedies afforded to an indi-
vidual."   The defendant has capacity to sue and be sued,

to audit, settle, pay or compromise claims against it and this fairly implies power to agree upon terms of payment and to waive by proper agreement the defense of the Statute of Limitations as to claims not barred. This power was exercised in this case for the purpose of relieving the county from actions at law in each year as the time for bringing such suit was about to expire and we think the bar of the statute is thereby avoided. This result does not disturb the rule, which is conceded, that a county, through its board of supervisors, can exercise only such powers as are expressly conferred by statute, or such incidental powers, not expressly enumerated, as are necessary to carry out the express powers, and, moreover, it is supported by those general principles of equity and justice which are binding upon all corporations as well as upon individuals.

The judgment should be reversed and judgment ordered for the plaintiff for the entire claim with interest in conformity with this opinion, with costs in this court to the appellant.

All concur.

Judgment reversed and judgment accordingly.