FRANK C. VINTON, as Supervisor of the Town of Persia, Respondent, *v.* THE BOARD OF SUPERVISORS OF CATTARAUGUS COUNTY and HENRY O. WAIT, Appellants.

*Failure of a county treasurer to apply tax money to pay town railroad bonds — action therefor by a town against the county — county entitled to credit for money applied improperly to the benefit of the town.*

A town has the right, by its supervisor, to maintain an action against the county for the failure of the county treasurer to follow the directions of chapter 907 of the Laws of 1869, as amended by chapter 283 of the Laws of 1871, in regard to the disposition to be made by him of moneys collected by taxes upon the assessed valuation of a railroad in such town.

Upon the trial of an action brought by the supervisor of a town against the board of supervisors of the county to recover the money misappropriated by its county treasurer, resulting from his failure to follow the directions of chapter 907 of the Laws of 1869, as amended by chapter 283 of the Laws of 1871 — said act providing in effect that all taxes, except school and road taxes, collected in any town on the assessors' valuation of any railroad within it, for which the town should issue its bonds to aid in the construction of such railroad, shall be paid over to the county treasurer, and that it shall be the duty of such county treasurer, with the money thus collected and paid over to him, to purchase such bonds or invest the money in the manner therein prescribed as a sinking fund for their redemption and payment — it appeared that in each year a specific sum was collected by tax upon the taxable property in the town to make payment of the interest and upon the principal of bonds so issued, and that the amount of money so collected for such purpose was paid over to the railroad commissioners of the town and was so applied in payment of the interest upon and by way of redemption of the bonds which had been issued by the town in aid of the railroad.

*Held,* that while such money was not paid upon the bonds by the county treasurer, nor the money derived from such tax on the railroad property and paid over to him set apart as directed by the statute, yet the benefit accruing to the town from such payment through its railroad commissioners was practically the same, and that the county should have credit for the amount so collected and paid in to the railroad commissioners.

It appeared that in each year a certain sum of money was levied and assessed against the railroad company and a proportion thereof paid to the county treasurer and applied to the payment of State and county taxes.

The tax which was levied each year was levied without reference to the requirement of the statute, that money received as taxes from the railroad company should be paid over to the county treasurer to purchase such bonds or to invest the money received as therein provided, and if the money so collected from such railroad had been applied as directed by the statute it would have been

necessary to have raised an additional sum upon the assessed valuation of property in the town other than that of the railroad company.

*Held,* that as a portion of the money so collected from such railroad company was actually appropriated and applied to the benefit of the town, it would be inequitable to include the amount of such portion in a recovery against the county.

APPEAL by the defendants, The Board of Supervisors of Cattaraugus County and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Cattaraugus on the 6th day of September, 1894, upon the decision of the court rendered after a trial at the Cattaraugus Special Term.

In 1873 the town of Persia, in the county of Cattaraugus, issued its bonds to the Buffalo and Jamestown Railroad Company to the amount of $29,000 in aid of the construction of its railroad. It was constructed and has since become known as the Buffalo and Southwestern railroad.

*Norman M. Allen,* for the appellants.

*Leonard & Sprague* and *William Woodbury,* for the respondent.

BRADLEY, J.:

The bonds of the town of Persia were issued pursuant to chapter 907 of the Laws of 1869, as amended by chapter 283 of the Laws of 1871. This action is founded upon the fact that the moneys arising from taxes collected upon the assessed valuation of the railroad in the town were by the treasurer of the county misappropriated and diverted from the purposes to which he was directed to devote their use by the statute, which provided in effect that all taxes except school and road taxes collected in any town on the assessors' valuation of any railroad within it, for which the town should issue its bonds to aid in the construction of such railroad, should be paid over to the county treasurer; that it should be his duty with the money thus collected and paid over to him to purchase such bonds or invest the money in the manner mentioned therein as a sinking fund for their redemption and payment. (Laws of 1871, chap. 283, § 1.)

Although the moneys collected on the assessment of the railroad, other than school and road taxes, were annually paid over to the

county treasurer, the statutory direction was not observed by him, but those moneys were treated in distribution as were the moneys collected on the assessed valuation of other property within the town, and, therefore, contributed proportionately to the fund which was annually applied to the payment of State and county taxes.

The controversy now relates only to the moneys collected on the assessments of the railroad property in the years 1879 to 1884 inclusive, since the recovery for moneys collected in the years preceding 1879 was, as held by the trial court, barred by the Statute of Limitations. The moneys derived from such assessments and paid over to the county treasurer were, in 1879, $303.15 ; in 1880, $314.08 ; in 1881, $249.74; in 1882, $278.14; in 1883, $305.66 ; in 1884, $280.02. For the aggregate amount of those sums, and interest upon them respectively to June 4, 1894, amounting together to the sum of $2,928.29, judgment was directed for the plaintiff.

The right of a town by its supervisor to maintain an action against the county for the misappropriation by its treasurer, resulting from his failure to pursue the direction of the statute before mentioned, is well settled by adjudicated cases. (*Bridges* v. *Board of Supervisors of Sullivan County*, 92 N. Y. 570; *Strough* v. *Board of Supervisors*, 119 id. 212 ; *Crowninshield* v. *Supervisors*, etc., 124 id. 583; *Kilbourne* v. *Supervisors, etc.*, 137 id. 170.)

The question here has reference to the extent of the recovery. In each of those years a specific sum was collected by assessment upon the taxable property in the town to make payment of the interest and upon the principal of such bonds, and the amount of moneys so collected for such purpose was paid over to the railroad commissioners of the town, and so applied in payment of the interest upon and by way of redemption of the bonds.

The trial court found that of the total amount so paid to the railroad commissioners of the town in each year the following sums were the portions thereof derived from the taxes levied and assessed against the railroad company in the town, that is to say : In 1879, $179.25 ; in 1880, $166.42; in 1881, $124.99; in 1882, $181.49 ; in 1883, $174.05; and in 1884, $167, making together $993.20. To that extent, therefore, the town had the benefit of the application to the payment of its bonds of the moneys collected during those years upon the assessed valuation of the railroad property. It is true that

it was not paid upon those obligations by the county treasurer, nor was the money derived from such assessment and paid over to him as before mentioned set apart as directed by the statute, but the beneficial effect to the town to the extent of such payment through its railroad commissioners was practically the same, and no good reason appears why the county should not have credit for it in this action.

The trial court also found that of the whole taxes levied and assessed in the town for those years there was paid to the town officers for local town purposes the following amounts of the taxes levied and assessed against the railroad company, to wit : In 1879, $22.71 ; in 1880, $43.73 ; in 1881, $44.49 ; in 1882, $31.42 ; in 1883, $37.26 ; and in 1884, $27.49, making together $207.10, and that of the taxes so levied and assessed against the railroad company in those years the proportion thereof paid to the county treasurer and applied to the payment of State and county taxes was as follows : In 1879, $101.19 ; in 1880, $103.93 ; in 1881, $80.26 ; in 1882, $65.23 ; in 1883, $94.35 ; and in 1884, $85.83, making together $530.79.

On this state of facts it appears that the town of Persia thus had the benefit of all the moneys levied and collected as taxes upon the property of the railroad company in the town during the years in question except the sum last mentioned.    The question arises whether by reason of the failure of the county treasurer to pursue the direction of the statute in respect to the money collected upon the assessment of the railroad property, the county should be denied credit in this action for a sum equal in amount to the portion of the money so collected of the railroad company which went to the railroad commissioners and the officers of the town for its local purposes.    The answer given by the counsel for the respondent to this suggestion is to the effect that the receipt by the town of what was due to it on one demand did not pay what was due to it on another, and that the default in duty of the treasurer was in not applying or investing the specific taxes as he was required to do for the benefit of the town.

It is true that in not so applying the money derived from the assessment of the railroad property the treasurer clearly disregarded

his duty. But if he had done as the statute directed, the tax levied (assuming the amount which was so directed had been annually levied) upon the assessed property of the town in each of those years would have been insufficient in amount to answer the purposes for which the tax levy was made as represented by the tax roll and warrant delivered to the collector. It seems that the tax was levied each year without any reference to the requirement of the statute before mentioned; and it may be assumed that it was not contemplated, in making the tax roll, that any money would be set apart by the county treasurer for the redemption of the bonds, or that any moneys derived from taxes other than those expressly levied generally upon the assessed property of the town for such purpose would be applicable to the payment of the bonds. Otherwise it would have been necessary to have collected during those years the further sum of $737.89 by a tax upon the assessed valuation of property in the town other than that of the railroad company. The company would by the tax on its property have been charged with its proportion of the tax rate requisite to produce that amount from levy on the other property in the town, and the sum applicable to the redemption of the bonds would have been increased in amount equal to that so realized from the company. So that while the town was relieved from the levy of taxes to the amount of the deficiency in the fund applicable to the State, county and town taxes, it failed to derive from the railroad company the amount which should have been collected from it to apply upon the town bonds. But the latter fact requires no consideration, as the inquiry in the present action relates only to the moneys which were actually derived from the taxes levied upon the assessed valuation of the railroad property.

While it may be said that the town in some sense was benefited by the application of the money collected from the railroad company to the payment of the State and county taxes, since the assessable property in the town was chargeable with the payment of its quota of those taxes, there is a distinction in the beneficial nature to the town of the moneys thus applied and those which were appropriated to the payment of its bonds and local town expenses. The moneys expended for the latter purposes were devoted to the use of the town, and it is difficult to see any reason founded upon equitable considerations why the assessable property in the county

should be charged with the payment to the town of the amount of those moneys which had been thus applied to its use and benefit.

Nor does the adoption of such an arbitrary rule seem justified by any principle applicable to the present case.

In *Bridges* v. *Supervisors* (92 N. Y. 570) and in *Strough* v. *Supervisors* (119 id. 212) it was said that an action for money had and received was a proper remedy for relief of a town for the cause upon which this action is founded.

Whether strictly so or not, such is the nature of an action at law brought in behalf of a town to recover the amount misappropriated by the county treasurer in the manner alleged in the case at bar. In the complaint in this action equitable relief was demanded, but the facts were specifically alleged, and as the defendants answered the complaint, the form of relief demanded became immaterial, and judgment was directed and entered as in an action at law for a specific sum. This was regular in view of the facts as alleged and determined. (Code Civ. Proc. § 1207.)

The principles applicable to an action for money had and received are no less applicable to the present one, as such in its nature and purpose. In that view it is to be determined upon equitable considerations consistent with the legal rights of the parties, and the question as between them is what amount according to equity and conscience is the plaintiff entitled to recover against the defendants. (*Wright* v. *Butler*, 6 Wend. 284; *Eddy* v. *Smith*, 13 id. 488; *Buel* v. *Boughton*, 2 Den. 91; *Cope* v. *Wheeler*, 41 N. Y. 303; *Hathaway* v. *Town of Cincinnatus*, 62 id. 434.) The application of this doctrine to the present case requires the court to look beyond the mere fact of the failure of the treasurer to perform the statutory direction, to see the consequences resulting to the town by reason of such default, and as it appears that a portion of the sum in question was actually appropriated and applied to the use and beneficial purposes of the town it would be contrary to equity and conscience to include the amount of such portion in the recovery against the county, and in the view here taken the plaintiff is not entitled to recover it in this action.

In *Matter of Clark* v. *Sheldon* (134 N. Y. 333) neither the town, by its supervisor, nor the county, by its board of supervisors, was a party; the proceeding was instituted by a taxpayer of the town of

Sodus against the treasurer of Wayne county pursuant to the statute to compel him to apply, as there directed, the moneys derived from the taxes upon the railroad property there mentioned. (Laws of 1871, chap. 283, § 1.)

That case, therefore, has no necessary application to the question in this one.

These views lead to the conclusion that the judgment should be reversed and a new trial granted, costs to abide the event, unless the plaintiff stipulates to reduce the recovery, exclusive of costs, to $530.79 and interest on $101.19 from June 1, 1879; on $103.93 from June 1, 1880; on $80.26 from June 1, 1881; on $65.23 from June 1, 1882; on $94.35 from June 1, 1883, and on $85.83 from June 1, 1884.

If the plaintiff so stipulates the judgment be modified accordingly, and as modified affirmed, without costs of this appeal to either party.

WARD, J., concurred; LEWIS, J., not sitting.

So ordered.